

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DIANA DIETRICH-BARNES, § § Plaintiff, § § v. § § TERENCE ALEXANDER and § THE CITY OF ATLANTA, GEORGIA, § § Defendants. § § THE CITY OF ATLANTA, GEORGIA; § CHIEF RICHARD PENNINGTON; § LIEUTENANT JOHN MATHIS; § LIEUTENANT ANTHONY BIELLO; § and SERGEANT D.C. WILLIAMS, § § Cross-Defendants. § | CIVIL ACTION FILE NUMBER 1:05-cv-1751-TCB |

## ORDER ON PLAINTIFF'S MOTION
## FOR JUDGMENT ON THE PLEADINGS

This action is before the Court on Plaintiff's Rule 12(c) motion for judgment on the pleadings on Defendant Alexander's counterclaim [38].

## I. Background

The counterclaim avers[1] the following:

On November 2, 2004, at approximately 3:40 p.m., Plaintiff Diana Dietrich-Barnes was illegally parked along the curb at the South terminal at Hartsfield/Jackson Atlanta International Airport. Defendant Terence Alexander, a City of Atlanta police officer, noticed a number of vehicles illegally parked along the curb, and he blew his whistle several times while walking along the sidewalk and motioning for the vehicles to move.

Vehicles in front of and behind Barnes complied with Alexander's orders and moved, but Barnes, who was driving a sport utility vehicle, did not move.

Officer Alexander approached Barnes's vehicle and asked her to move. He explained the Department of Homeland Security's prohibition against airport curbside parking. Barnes responded, "I am not going to f---ing move. I am tired of you officers s---ting people." Officer Alexander asked for Barnes's driver's license, registration and proof of insurance, whereupon she quickly put her vehicle in reverse and began to back up,

---

[1] For purposes of Plaintiff's motion the Court accepts the averments of the counterclaim as true. Plaintiff, of course, vigorously disputes those averments.

striking him with the mirror of her vehicle, thereby injuring his left elbow and tearing his left rotator cuff.

Alexander then ordered Barnes to stop and exit the vehicle. After three or four requests that she get out of her vehicle, Alexander physically removed her and took her to the rear of her vehicle, where he attempted to handcuff her. When Barnes refused to place her hands behind her back and lunged back toward the open door of her vehicle, Alexander picked her up and laid her on the ground.

Alexander placed Barnes under arrest with the assistance of two other officers. Barnes refused to place her hands behind her back, and another officer had to pry her hands from under her to place handcuffs on her.

Barnes was later "un-arrested" because she knew one of the lieutenants who took charge of the scene from Officer Alexander's immediate supervisor, Sergeant Tucker, who had agreed with Alexander that there was sufficient probable cause to arrest Barnes.

In addition to injuring Alexander with her vehicle, Barnes subsequently slandered him nationally and internationally, making him appear as a "monster to cover up her civil disobedience and criminal conduct."

Alexander's counterclaim asserts four causes of action against Barnes. The first is for personal injuries from her backing her vehicle into him. Alexander alleges that this conduct was "willful, wanton or grossly negligent."

Alexander's other claims are for defamation, conspiracy, and intentional infliction of emotional distress.

Barnes contends that she is entitled to judgment on the pleadings on all four of Alexander's claims.

## II. Discussion

### A. Standard

Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts. *Andrx Pharms., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1232-33 (11th Cir. 2005).

### B. Defendant's Counterclaim

#### 1. Bodily Injury

Barnes contends that the Fireman's Rule bars Alexander's bodily injury claim.

> The Fireman's Rule originated under the principle that "while a fireman may recover for negligence independent of the

> fire, a landowner is not liable for negligence in causing the fire." *Ingram v. Peachtree South*, 182 Ga. App. 367, 368 (355 S.E.2d 717) (1987). The Fireman's Rule has been extended to police officers and other public safety officers under the theory that one "cannot complain of negligence in the creation of the very occasion for his engagement." (Citations, punctuation and footnote omitted.) *Kapherr v. MFG Chemical*, 277 Ga. App. 112, 115 (1) (625 S.E.2d 513) (2005).

*Davis v. Pinson*, 279 Ga. App. 606, 607, 631 S.E.2d 805, 806 (2006).

Alexander contends that the Fireman's Rule does not bar his bodily injury claim because Barnes failed to raise the defense as an affirmative defense in her reply. This argument lacks merit for several reasons. First, it is not clear that the Fireman's Rule is an affirmative defense under Fed. R. Civ. P. 8(c). *Cf. Vroegh v. J&M Forklift*, 651 N.E.2d 121, 125-26 (Ill. 1995). Second, even if the Fireman's Rule were an affirmative defense, Barnes raised it when she pled assumption of the risk as her tenth affirmative defense, inasmuch as the Fireman's Rule is premised upon the doctrine of assumption of the risk. *Brown v. Gen. Elec. Corp.*, 648 F. Supp. 470, 471 (M.D. Ga. 1986). Finally, even if the Fireman's Rule were an affirmative risk that Barnes had failed to raise, Barnes would still be permitted to file a motion for judgment on the pleadings based upon that defense. *Grant v. Preferred Research, Inc.*, 885 F.2d 795, 798 (11th Cir. 1989).

Alexander next contends that because the extended discovery period did not expire until December 27, 2006 (after Barnes filed her motion on October 27), "the pleadings have not closed," and summary disposition is premature. This argument also lacks merit, as the propriety of judgment on the pleadings is unaffected by discovery.

Finally, Alexander contends that the Fireman's Rule does not bar his bodily injury claim because the rule only applies to claims based upon simple negligence. The Court agrees.

In *Martin v. Gaither*, 219 Ga. App. 646, 466 S.E.2d 621 (1995), the Georgia Court of Appeals extended the Fireman's Rule to cover police officers. However, the court in *Gaither* suggested that the rule does not preclude "recovery for injury from pitfalls, mantraps and things of that kind or wanton and wilful conduct." *Id.* at 647-48, 466 S.E.2d at 622 n.1; *accord McClelland v. Riffle*, 970 F. Supp. 1053, 1055 (S.D. Ga. 1997).

Alexander's counterclaim for bodily injury alleges more than simple negligence. Paragraph 14 reads, "The conduct of the Plaintiff was in violation of a lawful command of a police officer to present identification and was willful, wanton or grossly negligent." As such, it cannot be said

that because of the Fireman's Rule Barnes is entitled to judgment on the pleadings as a matter of law with respect to count one.

### 2. Defamation

Count two of the counterclaim alleges that Barnes has falsely accused Alexander on national television, international television, newspapers and web sites of violently slamming her to the ground, screaming at her and otherwise using excessive force against her. Barnes contends that she is entitled to judgment on the pleadings on this claim for three reasons: the counterclaim fails to allege the essential element of publication by Barnes of the defamatory material; Barnes's conduct was privileged; and Alexander's claim is barred by Georgia's Anti-SLAPP statute.[2]

Barnes first argues that Alexander "fails to allege a single publication of any defamatory material . . . or in any way suggest how [Barnes] is responsible for publication of any false allegation regarding him."

Federal procedural law governs Alexander's counterclaim. *Caster v. Hennessey*, 781 F.2d 1569, 1570 (11th Cir. 1986). According to Fed. R. Civ.

---

[2] Alexander argues that Barnes' failure to raise these affirmative defenses in her answer to his counterclaim is fatal. As discussed above, these defenses are not affirmative defenses under Fed. R. Civ. P. 8(c) and Barnes' failure to raise them in her answer does not preclude her from filing a motion for judgment on the pleadings based upon these defenses.

7

P. 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Alexander has satisfied this liberal pleading standard, as the counterclaim has "reproduced the allegedly defamatory statement and generally described its publication." *Id.* at 1570.

Next, Barnes argues that her conduct, namely her "successful defense of the criminal proceedings" and her "claims in this lawsuit," are privileged and protected under the *Noerr-Pennington* doctrine.

The *Noerr-Pennington* doctrine immunizes an entity from antitrust liability when it seeks to influence governmental action through litigation or lobbying. The doctrine was established in the context of legislative petitions in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965), and was extended to apply to actions before courts and administrative agencies in *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972). The doctrine has only been applied to situations where direct action is taken to influence governmental decision-making and not to actions occurring in an essentially private

context. *See Agritronics Corp. v. Nat'l Dairy Herd Ass'n, Inc.*, 914 F. Supp. 814, 823 (N.D.N.Y. 1996) (internal citations omitted).

Some courts have expanded the protection of the *Noerr-Pennington* doctrine to state tort law liability for parties petitioning the government for an action favorable to them. *See IBP Confidential Bus. Documents Litig.*, 755 F.2d 1300, 1312 (8th Cir. 1985). Courts have not, however, extended the doctrine to shield defendants from liability for defamation. *See Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, No. 00 Civ. 3613, 2004 U.S. Dist. LEXIS 17093, at *74 (S.D.N.Y. Aug. 27, 2004).

Moreover, the alleged conduct that forms the basis of Alexander's counterclaim is more than what Barnes' claims is protected by the *Noerr-Pennington* doctrine, her "successful defense of the criminal proceedings" and her "claims in this lawsuit." Alexander bases his counterclaim on Barnes's alleged defamation of him made on television, in newspapers and on websites. Because the *Noerr-Pennington* doctrine does not protect against liability for defamation, Barnes's alleged conduct is not protected.

Finally, Barnes argues that Alexander's defamation claim is barred by Georgia's Anti-SLAPP statute, O.C.G.A. § 9-11-11.1. Section (b) of this statute provides:

> For any claim asserted against a person or entity arising from an act by that person or entity which could reasonably be construed as an act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern, both the party asserting the claim and the party's attorney of record, if any, shall be required to file, contemporaneously with the pleading containing the claim, a written verification under oath as set forth in Code Section 9-10-113. Such written verification shall certify that the party and his or her attorney of record, if any, have read the claim; that to the best of their knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the act forming the basis for the claim is not a privileged communication under paragraph (4) of Code Section 51-5-7; and that the claim is not interposed for any improper purpose such as to suppress a person's or entity's right of free speech or right to petition government, or to harass, or to cause unnecessary delay or needless increase in the cost of litigation. If the claim is not verified as required by this subsection, it shall be stricken unless it is verified within ten days after the omission is called to the attention of the party asserting the claim.

The Court finds that even if Barnes's statements fall under this statute and that a verification from Alexander and his attorney is required, the Court cannot dismiss Alexander's counterclaim at this time because

> [D]ismissal cannot be based solely on evidence that the claim involves statements in furtherance of the right of free speech or the right to petition the government, in connection with an issue under consideration or review by a governmental body. Once the trial court makes that threshold decision, it cannot dismiss the claim unless it also determines that (a) the claimant or his attorney did not reasonably believe that the claim was well grounded in fact and that it was warranted by existing law or a good faith argument for the modification of existing law, (b) the claim was interposed for an improper purpose, or (c) the defendant's statements were privileged pursuant to O.C.G.A. § 51-5-7(4).

*Atlanta Humane Soc'y v. Harkins*, 278 Ga. 451, 452 (2004). Inasmuch as this is a motion for judgment on the pleadings and the Court must therefore accept the facts in the counterclaim as true and view them in the light most favorable to the Defendant, the Court cannot at this time make any of the above determinations. Accordingly, Barnes is not entitled to judgment on the pleadings as to count two of the counterclaim.

### 3. Conspiracy to Interfere with Civil Rights

Count three of Alexander's counterclaim is titled "Violation of 42 U.S.C. § 1985 (2) Conspiracy to Interfere with Civil Rights" and consists of one numbered paragraph (24), which is a rambling collection of words, apparently lifted verbatim from the referenced statute, that cannot accurately be described as a sentence, reading as follows:

> Plaintiff, in concert with Lt. Greg Mathis and all others, by conspiring for the purpose of impeding, hindering, obstructing or defeating the due course of justice in the Magistrate Court of Clayton County with the intent to deny Officer Alexander the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce his right to equal protection of the laws by making false and malicious statements and by the presentation of a video not in real time or otherwise altered.

Construed liberally, it apparently means that Alexander claims that he was the victim of a conspiracy between Barnes and the "City Defendants" to retaliate against him for seeking an arrest warrant against Barnes in the Magistrate Court of Clayton County.

Barnes argues that this claim must be dismissed because section 1985(2) provides a remedy for a retaliatory conspiracy arising from a state court proceeding only if the underlying state court proceeding involved a claim that alleged class-based animus, and the state court claim here did not.

Section 1985(2), in pertinent part, makes it unlawful for people to engage in certain conspiracies:

> [T]o conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the

right of any person, or class of persons, to the equal protection of the laws.

~~42 U.S.C. § 1985(2).~~

Section 1985(3) provides private parties a cause of action for violation of section 1985(2):

> [I]n any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

Id. § 1985(3).

Section 1985 is a Reconstruction-era statute intended to curb the activities of the Ku Klux Klan. *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 342 (5th Cir. 1981). "The 'equal protection' language included in the second clause of section 1985(2), requires an allegation of class-based animus for the statement of the claim." *Chavis v. Clayton County Sch. Dist.*, 300 F.3d 1288, 1292 (11th Cir. 2002), *citing Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (stating that under section 1985(3) the language requiring an intent to deprive of equal protection means that there must be some racial, or

perhaps otherwise class-based individually discriminatory claims behind the conspirators' action).

Barnes's argument is incorrect because the racial or class-based animus must be the motivation behind the conspirators' action, not the subject of the underlying proceeding as she argues.[3] Because Alexander has alleged elsewhere in his counterclaim that racial animus was present, his allegations state a claim under the second clause of section 1985(2).

### 4. Intentional Infliction of Emotional Distress

Barnes contends that Alexander's claim for intentional infliction of emotional distress[4] is barred by the Fireman's Rule, the *Noerr-Pennington* doctrine, and the fact that it fails to identify the conduct by Barnes that would support such a claim for relief.[5]

---

[3] In his reply, Alexander argues that "since there are private as well as state actors involved in the conspiracy class based animus should not apply." He does not cite any law supporting this proposition and the Court could not find any.

[4] In his counterclaim, Alexander titles count four as "intentional and negligent infliction of emotional distress." It appears from the allegations in his claim that this claim is meant to only be a claim for intentional infliction of emotional distress and the Court construes it as such.

[5] Again, Alexander argues that Barnes's failure to raise the Fireman's Rule and the *Noerr-Pennington* doctrine as defenses in her answer to his counterclaim is fatal. As discussed above, even if these defenses are affirmative defenses under Fed. R. Civ. P. 8(c), Barnes's failure to raise them in her reply does not preclude her from filing a motion for judgment on the pleadings based upon these defenses.

The Fireman's Rule, for reasons explained above, does not bar Alexander's counterclaim because it alleges more than simple negligence; it alleges conduct that is "intentional, extreme and outrageous."

Barnes' argument based on the *Noerr-Pennington* doctrine is likewise unsuccessful. The Court could not find any case law from the Eleventh Circuit, nor has Barnes cited to any, holding that this doctrine shields defendants from liability for claims arising from intentional infliction of emotional distress.

Georgia law recognizes the tort of intentional infliction of emotional distress, which requires proof of the following four elements: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the plaintiff's emotional distress; and (4) the emotional distress must be severe. *Mangrum v. Republic Indus.*, 260 F. Supp. 2d 1229, 1256 (N.D. Ga. 2003). Alexander has met the pleading standard for a claim of intentional infliction of emotional distress. Accordingly, Barnes is not entitled to judgment on the pleadings as to count four.

## III. Conclusion

Barnes' motion for judgment on the pleadings is DENIED.

IT IS SO ORDERED this 2nd day of February, 2007.

_____
Timothy C. Batten, Sr.
United States District Judge